Commonwealth *v.* Central Pennsylvania Quarry Stripping & Construction Company, Appellant.

574

Argued May 25, 1966.  Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

*Richard C. Fox,* with him *McNees, Wallace & Nurick,* for appellant.

*Eugene J. Anastasio,* Deputy Attorney General, with him *Walter E. Alessandroni,* Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE COHEN, September 27, 1966:

This appeal raises the question of whether diesel fuel used to propel vehicles used by Central Pennsylvania Quarry Stripping & Construction Company (appellant) in its highway and other real estate construction business is taxable under the Selective Sales and Use Tax Act of March 6, 1956, P. L. (1955) 1228, as amended, 72 P.S. §§3403-1 to 3403-605. Appellant, following receipt of a use tax assessment for the period January 1, 1959, to May 31, 1962, from the Department of Revenue, pursued its administrative remedies and an appeal to the Court of Common Pleas of Dauphin County, all to no avail. It then took this appeal.

As originally enacted, the "Selective Sales and Use Tax Act" (Act) imposed a tax upon the use of tangible personal property within the Commonwealth. "Tangible personal property" was specifically defined in seventeen categories, the ones bearing on the present problem being as follows: "(1) Motor vehicles, trailers, semi-trailers and aircraft and all accessories, parts and equipment used in the maintenance, operation or repair of such motor vehicles, trailers, semi-trailers and aircraft, except gasoline.

"(3) All materials, supplies and equipment used in the construction, reconstruction, remodeling, repair and maintenance of any real estate.

"(4) Furnishings, appliances, supplies, fittings, ornaments, furniture, equipment and accessories for home, business, industrial or commercial use for indoor or outdoor purposes.

"(5) Business, industrial, professional and commercial supplies, equipment and machines of all types, including parts and accessories purchased on, or used in connection therewith.

"(13) Fuel oil and petroleum products for heating purposes, natural, manufactured and bottled gas and steam."

This initial enactment, however, had a short life for the Act of May 24, 1956, P. L. (1955) 1707, completely revised the Act. The relevant portions of the definition of tangible personal property became: "(1) Motor vehicles, trailers, semi-trailers and aircraft and all accessories, supplies, parts, lubricants and equipment used in the maintenance, operation or repair of such motor vehicles, trailers, semi-trailers and aircraft." (3) and (4) were unchanged. In (5) the word "on" was changed to "for." "(13) Fuel oil and petroleum products for heating purposes; steam and natural, manufactured and bottled gas; electricity, intra-state telegraph service and intra-state telephone service." In addition, the May 24 amendment added an exemption[1] from tax to §203 of the Act as follows: "(f) The sale at retail, or use of gasoline and other motor fuels, the sales of which are otherwise subject to excise taxes under the 'Liquid Fuels Tax Act,' May 21, 1931 (P. L. 194), as amended, and the 'Fuel Use Tax Act,' January 14, 1952 (P. L. 1965) as amended."

---

[1] For the nature of the nontaxables set forth in §203 see *Commonwealth v. Sitkin's Junk Co.*, 412 Pa. 132, 194 A. 2d 199 (1963).

To complete the statutory picture reference must be made to three other items. One is the amending Act of April 5, 1957, P. L. 34, which added the following exemption to §203: "(k) The sale at retail or use of tangible personal property to be used or consumed as fuel, supplies, ship's equipment, ships' stores or sea stores or vessels to be operated principally outside the limits of the Commonwealth." Second is the amending Act of May 9, 1957, P. L. 114, which added a further exemption to §203 as follows: "(m) The sale at retail or use of coal." Third is the unappealed decision of the Court of Common Pleas of Dauphin County in the case of *Commonwealth v. Rohm & Haas Co.*, 74 Dauph. 383 (1960), in which, principally through application of the maxim expressio unius est exclusio alterius, it was held that railroad tank cars were not a species of "tangible personal property" as defined in the Act. Since transportation equipment was dealt with specifically in one of the categorical definitions and did not include railroad tank cars, such item was not includible as industrial equipment in the broad categories (4) and (5).

Obviously, we deal with a confusing problem of statutory interpretation. Is diesel fuel used to propel highway construction equipment "tangible personal property" as that term is used in the Act?

We turn first to category (13) since the present assessment was based upon a determination by the Department of Revenue that diesel fuel used for propulsion purposes was "fuel oil" as used in that section. Bureau of Sales and Use Tax, Legal Unit Ruling No. 143a. This departmental position, of course, recognized that use of such fuel was not taxable if liquid fuels or fuel use tax had been paid thereon; but here the parties have stipulated as a fact that these other taxes were not paid.

Appellant's position is twofold: (1) diesel fuel is not "fuel oil" and (2) even if diesel fuel is "fuel oil," it is taxable only if used for heating purposes (and not, as here, for propulsion purposes). In support of its first position, appellant cites the differing standards for "diesel fuel" and "fuel oil" promulgated by the American Society for Testing and Materials and §33 of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 P.S. §533, which admonishes us to construe words "according to their common and approved usage." Here, says appellant, referring to Webster's International Dictionary (3rd Ed.), to the telephone book "Yellow Pages" and to a public opinion survey made by it, the common usage of "fuel oil" does not equate this product with "diesel fuel."

In support of its second point appellant notes that elsewhere in the categorical definitions a modifying phrase (such as "for heating purposes" here) appearing after a recital of more than one item (such as "fuel oil and petroleum products" here) has been held to modify both. It refers specifically to §2(1)(6) of the Act (as it read during the period involved here) which included: "(6) Cosmetics, toilet preparations, toilet articles, drugs and medical supplies, except when sold on prescription:" and points out that the excepting phrase clearly modifies more than just "medical supplies." Similarly, in §2(1)(15), "(15) Live animals, fish and birds (except when purchased as food for human consumption), and supplies, food and equipment used in connection therewith"; the concluding phrase "use in connection therewith" applies to "supplies" and "food" as well as "equipment" since food for humans is not taxable. All of this, says appellant, reveals a consistent grammatical approach taken by the legislature, one which requires a subsequent modifying phrase to apply to more than just the immediately preceding word or words.

Certainly, the issue is not clear cut. Had the legislature inserted the word "other" before "petroleum products" or had it left out the words "fuel oil and" in drafting category (13), it would be easier to conclude that this category is limited to fuels for heating use and that we must look elsewhere for treatment of fuels used for propulsion purposes. Not having done either of these, the General Assembly has left its intent uncertain.

Nevertheless, we are persuaded that category (13) does not include fuels used for propulsion purposes and that the inclusion of the words "fuel oil" in the category was done in order to emphasize the nature of what was being taxed—heating oils. We arrive at this position not only because we find recognized technical differences between the terms "diesel fuel" and "fuel oil" but also because we find an indication elsewhere in the categorical definitions that fuels used for propulsion were not to be included in category (13). Thus, in the original Act of March 6, 1956, supra, "gasoline" was excepted from the items contained in category (1), thus revealing a rather clear legislative intent that motor fuels otherwise were "accessories" used in the "operation" of the transportation equipment listed therein. The changes made by the Act of May 24, 1956, supra, in eliminating the single word "gasoline" from category (1) and establishing a broad exemption for all "motor fuels" subject to the other fuel excises also shows that the legislature knew that the words "motor fuels" could be distinct from "fuel oil."

Therefore, we believe that diesel fuel used to propel appellant's vehicles is not "fuel oil" as that term is used in category (13) of the definitions of "tangible personal property." It remains to be determined, however, if diesel fuel is included in one of the other categories.

At the outset we are faced with appellant's contention that the Commonwealth may not seek here to tax diesel fuel under one of the other categories because (1) the assessment was limited to the application of category (13) and (2) the Commonwealth gave no advance written notice of its intention to present new questions at trial as required by §1104 of "The Fiscal Code," Act of April 9, 1929, P. L. 343, 72 P.S. §1104. The relevant language of §1104 is as follows: "The Commonwealth may raise any question on appeal, although no appeal has been filed by it, and may introduce any facts in support of its settlement or in correction thereof, provided notice of twenty (20) days is given the appellant prior to trial of the intention of raising such new questions or presenting new facts." We agree with appellant that, for this provision to have any meaning, the Commonwealth must give the taxpayer advance written notice. Our agreement with appellant, as its argument applies here, stops at this point. We do not see in the Commonwealth's argument that diesel fuel might be taxable under a category or categories other than category (13) any raising of a new question or presenting of new facts which call for such advance notice. The question presented is whether diesel fuel is tangible personal property under the Act, and the Commonwealth is entitled to present all arguments in support of its position.

True, this approach can be carried too far. For example, the Commonwealth could not avoid its obligation under §1104 by saying the question is whether appellant is subject to tax and then raising a host of issues extraneous to the one on which the proceeding had developed. This is not the case here, however; so we shall proceed to an examination of the other categories.

First, the Commonwealth argues that the diesel fuel used by appellant is a material or supply used in the

construction and maintenance of real estate and, therefore, is included in category (3), supra. It is true that the fuel is used to operate the equipment owned by appellant and used here in the construction of highways and other real estate. We do not believe that category (3) is meant to include an item two stages removed in its actual application, however. The Commonwealth's analogy to the water used to make concrete is not in point for the water, although it does evaporate, is certainly a supply used in the first instance in the construction activity. The fuel used in the equipment is more akin to food consumed by the equipment operator, and there is no question that category (3) would not include such food apart from its nontaxable status otherwise.

Next, we turn to the application of category (1). It can easily be argued that diesel fuel is one of the "supplies" referred to in the amending act of May 24, 1956, supra, and even that it is one of the "accessories" referred to in the original language under the Act of March 6, 1956, supra. And since it is neither "gasoline" as set forth in the original excepting phrase nor a fuel subject to Liquid Fuels Tax nor Fuel Use Tax as set forth in the exemption provision of the amending act, it is not thereby excluded from coverage.

However, to be included it still must be used in connection with "motor vehicles, trailers, semi-trailers, and aircraft." The equipment used here by appellant is not "trailers, semi-trailers" or "aircraft"; the question is whether it is "motor vehicles." There is no definition of "motor vehicle" in the Act, but the Secretary of Revenue originally promulgated a regulation under the Act which defined the term as including such equipment.[2] The problem is that §101 of the "Statutory Con-

---

[2] We note, as supporting the position taken by us on this point, that the current regulations under the Act (not applicable during

struction Act," supra, 46 P.S. §601(70), contains a definition of "motor vehicle" which specifically excludes road construction equipment. This definition would be of no utility and would serve no purpose if it did not apply in situations like the present one, and no power to promulgate regulations is sufficient to allow avoidance of an applicable statutory definition. Therefore, we must conclude that diesel fuel, not being an accessory or supply used in the operation of a "motor vehicle," is not a type of tangible personal property included in category (1).

This leaves for consideration only the question of whether diesel fuel is included in the general categories (4) or (5), supra. This involves specific consideration of the *Rohm & Haas Co.* decision, supra. As pointed out above, the Court of Common Pleas of Dauphin County in that case held that railroad tank cars were not included in categories (4) or (5) because another category specifically covered transportation equipment and had omitted such cars. We are inclined neither to disagree with this conclusion nor to agree that its application is controlling here.

First, no category deals specifically with motor fuels used for propulsion purposes. Category (13), we have concluded, does not include such fuels at all. Category (3), we have determined, does not include such fuels by indirection. Category (1) includes, by reference to their use in specified types of transportation equipment, certain motor fuels; but it cannot be described as a category dealing specifically with motor fuels. In short, motor fuels as such receive no specific treatment in the categories and are thus subject to inclusion within categories (4) and (5).

---

the period involved here) exclude road machinery, etc., from the definitions of "motor vehicle." Sales, and Use Tax Regulations, Reg. 157, Vehicles, 6; 2 CCH Pa. State Tax Repts. para. 64-157.

Second, the exemption provisions of §203 indicate that fuels used for propulsion were intended to be covered by the general categories. The exemption in §203(k) for fuel used on certain vessels is meaningless otherwise; for ships (like railroad tank cars) were a type of transportation equipment not included in category (1). Therefore, fuel used on such ships would not be an accessory or supply within the scope of that category. Yet, fuel used for propelling transportation equipment not included in category (1) must be taxable if the exemption in §203(k) is to have any application. Only through its inclusion in categories (4) or (5) is this possible.

More confusing, but still of assistance in interpreting the statute, is the exemption in §203(m) for coal. Coal, eo nomine, is a fuel used both for heating and propulsion. It is clearly not included among the heating fuels listed in category (13), and strict application of the *Rohm & Haas Co.* decision, supra, would require our concluding that it could not be included under categories (4) or (5). Since this question is not before us, however, we specifically refrain from passing any judgment on this involved question. On the other hand, coal used as a fuel for propulsion purposes is in the same position as the diesel fuel involved here. It would not be an accessory or supply under category (1) since it is not used to propel motor vehicles, trailers, semi-trailers or aircraft; so the only interpretation which lends meaning to its exemption by §203(m) is one which recognizes its inclusion in categories (4) or (5).

For these reasons, therefore, we believe categories (4) and (5) are applicable here; and since diesel fuel used in the operation of construction equipment qualifies as a supply for business or commercial use under category (4) and as a business and commercial supply under category (5), it is "tangible personal property"

as defined in the Act. As such, its use by appellant, not being exempted by §203(f), is taxable.

In concluding, we want to emphasize that the problem involved in this case well illustrates the confused, and sometimes contradictory, nature of the categorical definitions of tangible personal property[3] contained in the Act prior to the amendments made by the Act of May 29, 1963, P. L. 49. The existence of this situation requires our reiteration of the fact that the discussion in this opinion is confined to a determination of the question of whether diesel fuel used to operate construction equipment is "tangible personal property" under the Act and should not be read as containing subtle interpretations affecting other issues not before us. Determinations regarding such other issues must await the presentation of these issues, if ever, so that each can be specifically reviewed.

The judgment of the court below is affirmed.

Mr. Justice O'BRIEN and Mr. Justice ROBERTS concur in the result.

---

[3] For a discussion of this problem generally, although not always in agreement with the conclusions expressed here, see Garfinkel, The Categorical Definition of Tangible Personal Property Under the Pennsylvania Selective Sales and Use Tax Act, 62 Dickinson L. Rev. 1 (1957).